UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JORDAN Y.,

                Plaintiff,

v.                                          1:19-CV-0854
                                                 (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     JEANNE MURRAY, ESQ.
  Counsel for Plaintiff                         KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               MIA SANTANGELO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 15.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

**A.     Factual Background**

Plaintiff was born in 1989. (T. 93.) He completed two years of college. (T. 233.) Generally, Plaintiff's alleged disability consists of: schizophrenia and associated symptoms, and "pain in extremities." (T. 232.) His alleged disability onset date is January 1, 2013. (T. 93.) His date last insured is March 31, 2017. (T. 93.) His past relevant work consists of debt collector and stocker. (T. 233.)

**B.     Procedural History**

On April 3, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 93.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 30, 2017, Plaintiff appeared before the ALJ, Benjamin Chaykin. (T. 33-70.) On May 16, 2018, ALJ Chaykin issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-32.) On April 26, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

**C.     The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-28.) First, the ALJ found Plaintiff met the insured status requirements through March 31, 2017 and Plaintiff had not engaged in substantial gainful activity since January 1, 2013. (T. 15.) Second, the ALJ found Plaintiff had the severe impairment of schizophrenia. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 16.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to simple, routine and repetitive tasks and limited to occasional interaction with supervisors, coworkers, and the public.  (T. 19.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 26-27.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly assess treating source opinion evidence.  (Dkt. No. 12 at 13-22.)  Second, and lastly, Plaintiff argues the ALJ failed to develop the record.  (*Id*. at 22-26.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 14.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly developed the record.  (Dkt. No. 13 at 18-23.)  Second, and lastly, Defendant argues the ALJ properly evaluated the treating psychiatrist's opinion.  (*Id*. at 23-31.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly weigh the opinion of treating psychiatrist, Hak Ko, M.D. because the ALJ failed to apply the *Burgess* factors and the ALJ improperly afforded greater weight to the opinions of the consultative examiners. (Dkt. No. 12 at 13-22.) For the reasons outlined below, the ALJ properly assessed Dr. Ko's opinion, properly afforded greater weight to the consultative examiners' opinions, and his determinations were supported by substantial evidence.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[1]. When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted). Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (citation omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Estrella,* 925 F.3d at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

On March 19, 2015, Dr. Ko completed a "Mental Health Report" for Niagara County Department of Social Services. (T. 301.) He indicated Plaintiff suffered from

---

[1] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

psychotic disorder with paranoid schizophrenia. (*Id*.) Dr. Ko noted "mild" improvement since starting treatment. (*Id*.) Dr. Ko stated Plaintiff needed to be in "intensive treatment for psychosis and will be unable to work." (*Id*.)

In a treatment notation dated May 12, 2016, Dr. Ko noted Plaintiff was "waiting to have a hearing for his SSD status and waiting for his student loan to be forgiven," and stated Plaintiff was "definitely a candidate for these benefits, and he remains somewhat regressed . . . but his symptoms are in control and he appears to be at his baseline." (T. 422.)

In September 2017, Dr. Ko completed a medical source statement form. (T. 407-409.) Dr. Ko indicated Plaintiff suffered from paranoid schizophrenia and listed his current global assessment of functioning ("GAF") score as 35. (T. 407.) When asked to circle the degree of Plaintiff's restriction of activities of daily living, Dr. Ko circled "moderate." (*Id*.)[2] When asked to circle the degree of Plaintiff's difficulty in maintaining social functioning, Dr. Ko circled "marked." (*Id*.) Dr. Ko circled "present" under "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner." (*Id*.) When asked if Plaintiff had repeated episodes of deterioration or decompensation, Dr. Ko answered "yes." (T. 408.) When asked if Plaintiff had a documented history of two or more years of inability to function outside of a highly supportive living situations, Dr. Ko answered "yes." (*Id*.) Dr. Ko indicated Plaintiff was "markedly impaired" or "extremely impaired" in every area of mental work-related functional abilities. (T. 408-409.)

---

[2] Dr. Ko could choose between the following options: none, mild, moderate, marked, extreme. (T. 407.) The terms are not further defined. (*Id*.)

The ALJ afforded Dr. Ko's September 2017 medical source statement "little weight."  (T. 24.)  Although the ALJ did not explicitly discuss the *Burgess* factors in his analysis of Dr. Ko's opinion, it is clear from the ALJ's decision he considered the *Burgess* factors and provided good reasons to support his determination.

First, the ALJ discussed Dr. Ko's treatment history with Plaintiff and treatment notations in great detail.  (T. 21-22, 23-24.); *see* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).  The ALJ considered the timing of Dr. Ko's opinion, noting the opinion was dated September 2017, however, the record indicated Plaintiff last received treatment from the doctor in September 2016.  (T. 24.)[3]  Therefore, although the ALJ did not explicitly consider Dr. Ko's status as a treating source, the ALJ's discussion of the doctor's extensive treatment history and dates of treatment indicate the ALJ was aware of the doctor's treating status.  *See Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23 (2d Cir. 2019) (although ALJ's decision was silent on whether treating source was a specialist, the ALJ nonetheless gave good reasons for assigning the doctor's opinion little weight).  The ALJ also properly noted Dr. Ko provided a medical source statement well after his last reported treatment of Plaintiff and therefore, Dr. Ko's opinion was not based on a contemporary treatment of Plaintiff.

Second, the ALJ concluded Dr. Ko's opined limitations were not supported by, and inconsistent with, the doctor's own treatment notations, treatment notations of Plaintiff's subsequent provider Wonhoon Park, M.D., and the opinion of consultative

---

[3]   The last treatment note signed by Dr. Ko was dated September 2, 2016.  (T. 424.)  Subsequent treatment notations were signed by Wonhoon Park, M.D.  (*See* T. 443.)  The year on Dr. Ko's opinion is illegible; however, the fax date indicated the form was faxed in 2017.  (T. 406-409.)

examiner, Kevin Duffy, Psy.D.  (T. 24-26); see 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

The ALJ considered Dr. Ko's recount of Plaintiff's long history of schizophrenia and noncompliance with treatment resulting in inpatient admissions, after which his condition was stabilized with medication.  (T. 21; see T. 303-310, 322-29, 417.)  Treatment records by Dr. Ko, as well as Plaintiff's subsequent treating source Dr. Park, repeatedly showed Plaintiff continued to do "very well" with treatment, with continued good control of his symptoms and stabilization of his condition without evidence of side effects, bizarre behavior, hallucinations, paranoia, or new stressors.  (T. 417, 418, 419, 420, 421, 422, 423, 424, 425, 444.)  Despite Plaintiff presenting on several occasions as somewhat blunted or withdrawn with little initiative or motivation (see e.g., T. 418, 420, 422), as consistent treatment continued, he become more animated and energetic, engaging more in activities such as household chores, reading the Bible, mowing the lawn, going to the gym/lifting weights, walking, running, and biking.  (T. 419, 421-24, 426, 444.)  Indeed, by December 2015, Plaintiff's mother described him as "almost back to normal."  (T. 421.)  And in May 2016, Plaintiff's father reported, "except for [Plaintiff's] fairly long sleeping hours, he has been doing very well. . . and had not shown any bizarre or paranoid behavior."  (T. 422.)  Plaintiff was also fully compliant with treatment, particularly with his Prolixin injections, that resulted in symptom improvement to the extent warranting medication adjustment either tapering or discontinuing medication with Plaintiff maintaining good remission without any psychotic or acute symptoms, or disturbing thoughts or perceptions.  (T. 417-425, 444.)

The ALJ assessed the supportability of Dr. Ko's assessment with the treating psychiatrist's own findings. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). As outlined by the ALJ, Dr. Ko observed no abnormalities upon mental status examinations on several occasions, which showed no bizarre, irritable, or grossly paranoid demeanor, relevant speech, a stable, non-depressed mood, "okay" orientation and memory, an average IQ, and no delusional thinking, mania, violence, or suicide attempt. (T. 22, 418, 419, 421, 422.) Upon Plaintiff's last visit with Dr. Ko, in September 2016, Plaintiff was maintaining good remission, doing very well with no psychotic symptoms, and appeared very stable despite recently discontinuing oral Prolixin. (T. 22, 424.)

Lastly, the ALJ determined Dr. Ko's opinion was inconsistent with the medical opinion provided by Dr. Duffy. (T. 25); *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence).

Based on his examination of Plaintiff, Dr. Duffy opined he was capable of following and understanding simple tasks independently; may have "some mild to moderate" difficulties maintaining attention and concentration "at times" able to maintain a regular schedule; can learn new tasks; can perform complex tasks independently; can make appropriate decisions; can relate adequately with others; and "may have some moderate difficulties dealing appropriately with high levels of stress." (T. 386.)

Therefore, although the ALJ did not explicitly discuss the *Burgess* factors in his evaluation of Dr. Ko's opinion, the ALJ's adherence to the factors is clear from his written decision. *See Guerra,* 778 F. App'x at 77 ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions

less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned."); *see Meyer,* 794 F. App'x at 23 (although ALJ's decision was silent on whether treating source was a specialist, the ALJ nonetheless gave good reasons for assigning the doctor's opinion little weight).

Next, Plaintiff argues the ALJ erred in affording more weight to the opinions of the consultative examiners than Dr. Ko's opinion. (Dkt. No. at 18-22). Plaintiff misstates the applicable law. Under the regulations, an "ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); *see* 20 C.F.R. §§ 404.1513(c), 404.1527(e), 416.913(c), 416.927(e).

To be sure, ALJs are cautioned "not to rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill,* 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013)) (remanding, noting one time consultative examination may not constitute substantial evidence). However, the opinion of a consultative examiner may constitute substantial evidence and even "override" the opinion of a treating source. *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (internal citations omitted) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical

consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

As outlined above, consultative examiner Dr. Duffy conducted an intelligence evaluation and a psychiatric evaluation. (T. 379-387.) Dr. Duffy opined Plaintiff had no limitation in his ability to: follow and understand simple instructions; perform simple tasks independently; perform complex tasks independently; learn new tasks; maintain a regular schedule; make appropriate decisions; and relate adequately with others. (T. 381-382, 386). Dr. Duffy opined Plaintiff "might have some" mild-to-moderate difficulty maintaining attention and concentration "at times," and "might have some" moderate difficulties dealing appropriately with high levels of stress. (T. 381-382, 386).

On July 8, 2015, non-examining State agency medical consultant, Dr. V. Reddy reviewed the record, Plaintiff's activities of daily living, as well as the findings and conclusions of consultant Dr. Duffy, and assessed Plaintiff's severe schizophrenic disorder did not prevent him from performing simple work. (Tr. 73-79, 83-90).

The ALJ stated he considered the consultative examiner's opinions and afforded the opinions "moderate weight." (T. 25-26.) The ALJ concluded Dr. Reddy's opinion was "fully consistent with the medical evidence" and Dr. Duffy's opinion was "mostly consistent with the medical evidence." (T. 25.) The ALJ concluded the doctors' opinions were consistent with Dr. Duffy's intellectual testing and objective examination findings. (*Id*.) The ALJ further concluded the doctors' opinions were consistent with evidence in the record of improvement with medication and treatment, specifically the observations of Dr. Park. (T. 25-26.) Lastly, the ALJ concluded the opinions were consistent with Plaintiff's self-reports of improvement and daily activities. (T. 26.)

Overall, the ALJ did not commit legal error in affording more weight to the consultative examiners' opinions over that of the treating source.  The ALJ properly weighed all of the opinion evidence in the record and the ALJ's determinations were supported by substantial evidence.

**B.     Development of the Record**

Plaintiff argues the ALJ failed to develop a complete record because he failed to obtain counseling records from Niagara Falls Memorial Medical Center ("Niagara"). (Dkt. No. 12 at 22-26.)  For the reasons outlined below, the ALJ fulfilled his duty to develop the record.

It is well-established Second Circuit law that "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation and citations omitted).  The ALJ must fulfill this duty "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

To discharge the duty, the ALJ will develop a complete medical history "for at least the 12 months preceding the month in which [Plaintiff] file[s] [his] application." 20 C.F.R. §§ 404.1512(d), 416.912(d).  An ALJ will "make every reasonable effort to help [the plaintiff] get medical reports from [his] own medical sources." *Id*.  Every reasonable effort is defined in the regulations as "an initial request for evidence from [the] medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one followup request to obtain the medical evidence necessary to make a determination." *Id*. at §§ 404.1512(d)(1), 416.912(d)(1).  Further, the ALJ's "obligation is lessened where, as here, the claimant is

represented by counsel who makes insufficient efforts to incorporate earlier records, and, in any event, we find nothing in the record that would have given the Commissioner reason for such a belief." *Bushey v. Colvin*, 607 F. App'x 114, 115-116 (2d Cir. 2015).

During Plaintiff's October 2017 hearing, the ALJ inquired where Plaintiff received mental health counseling. (T. 42.) Plaintiff indicated he saw "Katelyn" for counseling at Niagara once a month since April of 2015. (*Id.*) The ALJ noted the record did not contain counseling records from Niagara. (*Id.*) Plaintiff's counsel informed the ALJ his office requested records from Niagara and such records were submitted. (*Id.*) The ALJ requested that Plaintiff's counsel follow up with Niagara regarding monthly counseling visits. (T. 42.)

During follow up questioning by the ALJ, Plaintiff clarified he did not see any providers at Niagara between November 2016 and August 2017. (T. 45.) Indeed, in response for records from July 2015 to August 2017, Niagara indicated there were no records for the treatment dates. (T. 428, 431.) The ALJ stated he would hold the record open for two weeks for Plaintiff's counsel to submit any additional records from Niagara. (T. 44-45.) The ALJ informed counsel if he needed more time to request it. (T. 45.)

Here, the ALJ fulfilled his duty to develop. The ALJ recognized a potential gap in the record and requested counsel obtain any missing records. The day after the hearing, Plaintiff's counsel submitted additional records from Niagara containing treatment notes from Dr. Park dated February 15 and May 10, 2017 (T. 444-445). The evidence further contained a listing of Plaintiff's visits at Niagara from November 10,

2015 through November 21, 3017, including psychotherapy visits, but no actual therapy or counseling notes or records. (T. 433-434.)

Plaintiff's counsel did not indicate any additional records from Niagara were outstanding. (T. 432.) In letters dated November 14, November 30, December 14, and December 29, 2017, Plaintiff's counsel requested an additional two weeks to submit records from Highgate Medical Group. (T. 295.) Of note, Plaintiff did not request time to submit additional records from Niagara nor did Plaintiff submit additional records from either Highgate or Niagara. In a letter dated April 23, 2018, Plaintiff's counsel requested a status update of Plaintiff's case, but did not indicate any records were outstanding. (T. 299.)

The record was kept open for more than six months after the hearing, until May 16, 2018, when the ALJ's decision was issued. (T. 12.) In that six-month period Plaintiff did not submit addition records except those submitted the day after the hearing. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x. 542, 543 (2d Cir. 2005) (finding that ALJ fulfilled his duty to develop the record where "[a]lthough the ALJ did not contact or obtain records" from treating physician mentioned at hearing, the ALJ held open the record, plaintiff's counsel did not request assistance from the ALJ in obtaining the records, and plaintiff's counsel stated that there was nothing further to add to the record); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) (ALJ satisfied duty to develop where plaintiff's counsel "requested and received additional time to obtain the evidence in question" and then "submitted additional evidence following the hearing ... which could have led the ALJ reasonably to conclude that no

15

further records were available or forthcoming"). No additional evidence was submitted to the AC or this Court. Therefore, the ALJ fulfilled his duty to develop the record.

Overall, the ALJ has the duty to evaluate conflicts in the evidence. *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). If substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 13, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge